IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| LINDA W.,<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | Case No. 4:19-cv-04016-SLD-JEH |

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 9) and the Commissioner's Motion for Summary Affirmance (Doc. 13). This matter has been referred for a Report and Recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be granted, the Defendant's Motion for Summary Affirmance be denied, and the matter be remanded.[1]

**I**

Linda W. filed her application for disability insurance benefits (DIB) on July 1, 2015 and alleged disability beginning on December 13, 2013. Her claim was denied originally on October 16, 2015 and upon reconsideration on December 11, 2015. Linda filed a request for hearing concerning her application for DIB on February 2, 2016, and a hearing was held before the Honorable Michael Pendola (ALJ) on June 6, 2017. At that hearing, Linda was represented by an attorney, and Linda and a vocational expert (VE) testified. Following the hearing, Linda's claim

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears as (Doc. 6) on the docket.

was denied on October 25, 2017. Her request for review by the Appeals Council was denied on December 12, 2018, making the ALJ's Decision the final decision of the Commissioner. Linda filed the instant civil action seeking review of the ALJ's Decision on January 23, 2019.

## II

At the time of the hearing, Linda was 50 years old and lived in East Moline, Illinois with her husband. She claimed the following mental conditions limited her ability to work: major depressive disorder; moderate generalized anxiety disorder; and panic disorder with agoraphobia. AR 223.

Upon questioning by her attorney, Linda testified that she was "very, very nervous." AR 55. She drove her husband and herself to the hearing so that if she had to turn around and go home, she could do so. She testified that her difficulty going outside of the house was "really bad" the last seven years. *Id*. For some of those seven years she worked as an assistance manager at McDonald's. That job ended when McDonald's wanted her to transfer to a different location, but she "couldn't go that far." AR 56. Linda thought she could have stayed at that job without a change in location as she "would just go to work and go home." *Id*. She said her problem in leaving her house became worse since she left the McDonald's job as it was "hard for [her] to leave [her] apartment now." *Id*.

Linda testified that she treated with Julie Voelker, M.D., and Dr. Voelker sometimes increased Linda's medication dosage when Linda was more stressed. Linda said her medications taken together calmed her down "a little bit." AR 58. Linda was "really nervous" at the hearing. *Id*. Though if she were in her home she was "okay." *Id*. When she left her home to go to her doctors, either Linda's husband or her daughter "or somebody" went with her. AR 60. She explained she could not go by herself because she was too scared. The last time Linda went out of the house was when she walked her dog out in the yard. She could

"generally" go out into the yard by herself. AR 61. The last time Linda went as far as she did to attend the hearing (15, 20 minutes) was seven years before when she went to a cancer doctor. She added that she lived seven minutes from her previous McDonald's job.

At home, Linda cleaned, drew, and crocheted and enjoyed doing those things; they helped with her nervousness. Upon her attorney's prompting to explain what she was then doing, Linda described that she was shaking everywhere, and she was playing with her hands. She said such things happened when she became nervous, and they happened when she still worked. She further testified that there were times she got dressed and left the house and then had to turn around and return home. She usually went to doctors' appointments once per month but "sometimes I have to reschedule because I can't go that day." AR 64. Linda explained she did not attend her appointment with her attorney to get ready for the hearing because her attorney was "too far away." *Id*. She said, "The farther I go away from home the harder it is." *Id*. She did not understand why it was that way for her.

With regard to Linda's thought that she could have stayed at the McDonald's job at the previous location, she said she had good bosses that worked with her. She said she "sometimes" could not go to work back then, but they worked with her "on that." AR 66. She testified that she did not like to be around a lot of people and if it were really busy in the grocery store, she would have to leave. Her family came to see her, they stayed for a couple hours when they did, they had to come to her, and she related in "an all right fashion" to them. AR 67.

Upon questioning by the ALJ, Linda testified that she had been seeing Dr. Voelker for about two years, and Dr. Voelker helped her with her panic attacks and agoraphobia. Linda explained that she also saw a therapist to help her with the panic attacks and agoraphobia. Linda said the therapist came to her home.

3

Linda gave the following answer when asked why she stopped working in December 2013: "That's when like everything just caved in on me, and they wanted me to transfer and I couldn't transfer and my husband was having – had two heart attacks and open-heart surgery. And I just – everything just – just like exploded on me." AR 70. Linda confirmed she worked her McDonald's job since 2002.

The VE was next questioned.

### III

In his Decision at Step Two, the ALJ determined Linda had the following severe impairments: chronic obstructive pulmonary disease (COPD); obesity; affective disorders; and panic disorder with agoraphobia. AR 30. At Step Three, the ALJ determined Linda did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. The ALJ cited Listings 3.02 (Chronic Pulmonary Insufficiency), 12.04 (Depressive, Bipolar, and Related Disorders), and 12.06 (Anxiety and Obsessive-Compulsive Disorders). The ALJ addressed each of the four broad areas of functioning to determine whether the "paragraph B" criteria of Listing 12.04 and 12.06 were satisfied. After finding the "paragraph B" criteria were not satisfied, the ALJ stated that he also considered whether the "paragraph C" criteria were satisfied and concluded the "evidence fails to establish the presence of the 'paragraph C' criteria, as well." AR 32.

The ALJ made the following residual functional capacity (RFC) finding:

[T]he claimant has the [RFC] to perform a full range of work at all exertional levels but with the following nonexertional limitations: she should avoid concentrated exposure to extreme cold, defined as less than 32 degrees Fahrenheit and extreme heat defined as greater than 80 degrees Fahrenheit; avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation; and is restricted to simple and

routine tasks with brief and superficial contact with the general public.

AR 32. The ALJ detailed Linda's hearing testimony, her statements made elsewhere in the record, and the medical evidence. With regard to the medical evidence, the ALJ considered evidence that Linda was seen for depression and trouble sleeping, feeling "very panicky" whenever she left the house, increased anxiety, increased depression, ineffective medications, "occasional" anxiety, increased symptomatology, and difficulty with sleep. AR 35, 37. The ALJ noted the times when Linda was anxious and had psychomotor agitation while also exhibiting fair insight and judgment, intact attention and concentration, and okay mood. Much of the medical evidence pertaining to Linda's mental health came from the Robert Young Mental Health Center. Within those medical records, the ALJ underscored that: treating Dr. Voelker advised in October 2015 Linda's sleep apnea was likely contributing to her symptoms and added that Linda was not fully engaged in psychotherapy and thus thought her prognosis was limited until she was fully engaged; Linda reported fewer panic attacks which she attributed to her medication in March 2016; psychotherapy was going well; she reported her medications were helping and she was doing "pretty good" and was only "slightly anxious" in July 2016; Linda said she was happy at home and did not really desire to leave "regardless of anxiety" in September 2016; and she reported an increase in medication made her feel more calm at home and that she had been drawing a lot in January 2017. The ALJ also underscored that Linda testified at the June 2017 hearing that if she did not have to move to a different McDonald's location, she could have continued to work.

      The ALJ determined other evidence outweighed the GAF scores in the record, considered the opinion evidence provided by State Agency medical consultants in October and December 2015, and detailed (Linda reported

undergoing mental health care from a counselor and psychiatrist on an outpatient basis; complained of bothersome feelings of depression, anxiety, guilt, panic, fear, and mistrust; and said she was only occasionally withdrawn) and considered (findings assigned "great weight" "to the extent they are supported by the indicated [RFC] assessment" and were consistent with the record as a whole) the consultative psychological examiner's September 2015 report.

## IV

Linda argues: the ALJ erred in failing to provide any discussion of why Linda does not meet the relevant listing for agoraphobia; lacking any mention of absenteeism substantial evidence does not support the ALJ's RFC finding; and the ALJ erred by failing to include in his RFC finding and questions to the VE limits in attention, concentration, or pace he found supported by the record.

### A

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe or whether a combination of her impairments is severe;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. *Garfield v. Schweiker*, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Tom v. Heckler*, 779 F.2d 1250 (7th Cir. 1985); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984).

In the instant case, Linda claims error on the ALJ's part at Steps Three and Four.

**B**

Linda argues that the ALJ failed to address any of the appropriate criteria of the listing for agoraphobia (Listing 12.06) and failed to make a logical connection between the evidence and his conclusion that Linda did not meet the criteria of the listing. She specifically argues that she has made a *prima facie* showing that she satisfies the requirements of 12.06(A)(2) and 12.06(C)(1) and (C)(2). The Commissioner counters that the ALJ did not err at Step Three where the record did not lead to an inevitable conclusion that Linda could not perform any gainful activity. The Commissioner argues that Listing 12.06 required the ALJ to consider whether the "paragraph B" criteria were satisfied, and because the ALJ found no more than moderate limitations in each area and his determination was supported by substantial evidence, this Court should affirm his Decision.

**1**

Listing 12.06 provides that it is "satisfied by [the requirements in both] A and B, or [the requirements in both] A and C[.]" To satisfy 12.06(A), there must be medical documentation of the requirements of paragraphs 1, 2, or 3. Paragraph 2

8

requires that panic disorder or agoraphobia be characterized by one or both of the following:

> a. Panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences; or
> b. Disproportionate fear or anxiety about at least two different situations (for example, using public transportation, being in a crowd, being in a line, being outside of your home, being in open spaces).

Listing 12.06(C) provides:

> Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

**2**

In this case, after the ALJ cited the relevant listings, including Listing 12.06, he stated:

> Neither claimant nor her representative has met the burden of presenting medical evidence that supports such a finding. In fact, listing level severity is not asserted in this case. The undersigned has reviewed the medical evidence of record in is entirety and finds that when considered individually or in combination, the record does not contain medical findings obtained on clinical examination or special study that are the same as or equal to any of those listed in any subsection of the Listing of Impairments.

AR 31. Upon determining that Linda's mental impairments did not satisfy the "paragraph B" criteria, the ALJ stated: "The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to

establish the presence of the "paragraph C" criteria, as well." AR 32. The Commissioner argues that Linda has a very high hurdle in arguing that the record unequivocally supports that she is disabled under the Listings because the Listings require a heightened standard for disability. Be that as it may, the ALJ remained obligated to sufficiently articulate his consideration of the Listings at Step Three.

There are three requirements for an ALJ's Step Three determination to meet the "substantial evidence" standard upon review. *Cirelli v. Astrue*, 751 F. Supp. 2d 991, 1002 (N.D. Ill. 2010) (citing *Barnett v. Barnhart*, 381 F.3d 664 (7th Cir. 2004)). The ALJ must discuss the listing by name, must offer more than a perfunctory analysis of the listing, and must consider an expert's opinion on the issue of whether a claimant's impairment equals a listing as such an issue is a medical judgment. *Id*. (citing *Barnett*, 381 F.3d at 668, 670). Here, the ALJ's two sentences regarding the "paragraph C" criteria of Listings 12.04 and 12.06 were nothing if not perfunctory. The ALJ's first sentence in that regard was not so much analysis as simply an acknowledgment that he was required to consider the "paragraph C" criteria. True, the ALJ initially explained at Step Three that he reviewed the medical evidence of record in its entirety and determined that record was insufficient to show the Listings were met or equaled. The ALJ, however, essentially conflated his consideration of the Listings given the way in which he presented his conclusion. The Court cannot determine with any confidence whether the ALJ properly considered the medical and other evidence which specifically pertained to the question of whether Linda's panic disorder with agoraphobia met or medically equaled Listing 12.06(A) and (C).

The Commissioner's brief is of no assistance in that regard. In fact, the Commissioner's utter silence on the question of whether the ALJ properly considered the "paragraph C" criteria of Listing 12.06 only highlights the ALJ's

error further.² In fairness, the ALJ noted that listing level severity was not asserted in this case, and there is at least one case within this Circuit which looked disfavorably upon a claimant's late challenge to an ALJ's Step Three analysis. *See, e.g.*, *Knox v. Astrue*, 572 F. Supp. 2d 926, 935 (N.D. Ill. 2008). This Court has nevertheless been called upon by Linda to consider whether the ALJ fulfilled his duty at Step Three, and in the end, the Court must determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. Without any argument as to how and why the ALJ properly considered the "paragraph C" criteria or an argument that the doctrine of harmless error salvages the ALJ's Decision, the Court's task is made easier because the Court will not make the parties' arguments for them.

The Court must be able to trace the path of the ALJ's reasoning from the evidence to his conclusion. *See Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (stating that an ALJ must "sufficiently articulate [her] assessment of the evidence to assure us that the ALJ considered the important evidence . . . and to enable us to trace the path of the ALJ's reasoning"). In support of her contention that she made a *prima facie* showing that she satisfied the requirements of Listing 12.06(A) and (C), Linda cites to the medical evidence from the Robert Young Mental Health Center dated between March 2015 and May 2017 which indicated that Linda showed psychomotor agitation and/or anxiety, concerns about her anxiety about being outside of her home, in-home therapy would continue as of March 31, 2015 until her agoraphobia improved, she avoided treatment with her doctor for COPD because his office was "outside her comfort," she had a panic attack during an evaluation in March 2015, she appeared to have a panic attack while in the doctor's office in June 2015, she reported daily panic attacks in June 2016 and that was the

---

² In his brief, the Commissioner limits his Step Three argument to why the ALJ's consideration of the "paragraph B" criteria was sufficient to affirm that part of the Decision.

11

reason she missed therapy appointments, and she continued to rarely leave the house in March 2017. She also points out that her overall impairment level was assessed as "severe" in March 2015 and March 2016. Linda argues the Robert Young records reveal her symptoms were reduced as long as she remained within her safety zone, and she continued to confine herself to her safety zone as illustrated by her inability to meet with her attorney or to travel unaccompanied outside of her home (per her testimony).

The Court cannot trace the path of the ALJ's reasoning between the foregoing evidence and his determination that "the evidence failed to establish the presence of the 'paragraph C' criteria" of Listing 12.06 because he provided no real analysis at Step Three. The Court remains uncertain whether the ALJ did, in fact, consider the important evidence. Certainly, the Court must consider the ALJ's Decision as a whole which includes, of course, the ALJ's discussion of the evidence in support of his RFC determination. *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004). Nevertheless, the Court would still have to supply the bridge between the ALJ's analysis of the evidence in assessing Linda's RFC and the ALJ's conclusions as Step Three. That is not the Court's duty. *See Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (an ALJ must "build an accurate and logical bridge from the evidence to the conclusion"). Remand is necessary for the ALJ to build the required accurate and logical bridge from the evidence to his conclusion that Linda does not meet Listing 12.06. The Court therefore does not reach Linda's challenge to the ALJ's RFC finding nor her challenge to the ALJ's RFC and questions to the VE regarding her limitations in concentration, persistence, or pace.

## V

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 9) be granted; 2) the Defendant's Motion for Summary Affirmance (Doc. 13) be denied; and 3) this case be remanded to the Commissioner of Social Security for further proceedings consistent with this Report & Recommendation Pursuant to 42 U.S.C. §405(g), Sentence Four.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on November 26, 2019.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE